Kennon, J.
A bill of review was filed, in the court of common pleas of Hamilton county, to reverse a decree of that court. The cause was taken to the Supreme Court of that county, by appeal, and was there pending when the new constitution took *effect ; was regularly transferred to the district court, and by that court reserved for decision by the Supreme Court. At the January term,, *704 1853, tbe Supreme Court reversed tbe decree of the court of common pleas, and remanded the cause to that court for further proceedings.
The hill under consideration was filed in this court, to review and reverse its own decree.
Sturges and Anderson, who are defendants to this last bill of review, moved the court to dismiss the bill. The princij>al grounds-for the motion are—
1. That, by the present constitution of Ohio, the Supreme Court has original jurisdiction only in quo warranto, habeas corpus, mandamus, and procedendo; that, in the consideration of this bill of review to its own decision, the Supreme Court would be exercising' original, and not appellate, jurisdiction.
2. That, if it be the exercise of appellate jurisdiction, still the legislature, although authorized by the constitution to do so, has'not as yet conferred that jurisdiction on the Supreme Court; and, therefore, whether it be the exercise of original or appellate jurisdiction, this court can not entertain jurisdiction, and the bill must be dismissed. *
On the other side, it is claimed—
1. That, whether the entertaining of a bill of review be the exercise of an original or appellate jurisdiction by this court, it can rightfully entertain jurisdiction, for the reason that the original bill was pending when the new constitution took effect, and that,, by a provision in the constitution and subsequent acts of the legislature, the right to correct an error of the Supreme Court, by bill of review, is saved to the parties to such pending suit.
' 2. That the Supreme Court, in entertaining a bill of review,, would be exercising appellate and not original jurisdiction.
The motion has been argued on both sides by able counsel, and with great ability, and has received a very careful consideration, from this court. This question is one not free from doubt.
*It is very clear, that the Supreme Court had jurisdiction of the case in which it made the decree, to reverse which the j>resent bill of review is filed. This indeed is not denied. It could not be with any show of reason.
It is equally clear, that however erroneous the decree may be,, if this court can not review its own decree, no other court can, and' the party is wholly without remedy. The truth of this proposition is admitted by the counsel who make this motion, but they claim: *705 that it is the necessary consequence of a decision of a court of the last resort, having no more original jurisdiction than is conferred on our Supreme Court.
Indeed, it is argued with much force, “that it would be far better for the parties litigant — all who are engaged as lawyers, parties, and judges, in preparing and disposing of business before it, to understand that its determinations are, in the full sense of the word, final, than that the court might be required to review its determinations; that the business would be better prepared for the action of the court, the court would deliberate more carefully, and that which is, in most cases, of equal importance would follow, viz., there would be an end of litigation.”
That the legislature, under our constitution, could authorize an appeal, in all cases, from the decisions of the district courts to the Supreme Court, there can be no doubt. The Supreme Court, by the constitution, “ shall have original jurisdiction in quo warranto, .habeas corpus, mandamus, and procedendo, and such appellate jurisdiction as may be provided by law.” The Supreme Court is capable of receiving appellate jurisdiction directly from any court in the state. The legislature might lawfully provide, that every case tried in the several courts of common pleas, whether the questions were of law or of fact, might be appealed to the Supreme Court of the state; that such appeal should vacate the the judgment below; and that the case, when so appealed, should be tried in the Supreme Court, in the same manner as in the common pleas; and that the Supreme Court should have the same power *and control over the case, which the court of common pleas had before the appeal.
Such case could not originate in the Supreme Court; but, having •originated in the court below, and having been properly brought to the Supreme Court, by appeal, the question might arise, what power could the legislature confer upon the Supreme Court over the ease, and the parties in the Supreme Court? Is that court not capable of receiving power to try a case by a jury — to receive the verdict, render judgment, and enforce its own judgment by execution ? Is it not capable of receiving power to grant a new trial, either on account of the verdict being against evidence, or on account of the court receiving incompetent or rejecting competent evidence, or on account of the misdirection of the court to the ury on points of law? The Supreme Court, as an appellate court, *706 has jurisdiction of the cause; and it could scarcely be doubted but that all these powers might be conferred on such appellate court, as necessarily incident to the proper determination of the cause. The time within which such application to the Supreme or appellate court, for a new trial, could be made, might also be prescribed by the legislature. It might be required to be made at the same term at which the judgment was rendered, or the time might be extended until the first day of the next term of the court after the rendition of the judgment. We think such legislation would not be liable to the objection that it was unconstitutional because it conferred upon the court original jurisdiction. It would be appellate jurisdiction if the language of the constitution had been stronger than it is, and if it had provided that the Supreme Court should have original jurisdiction in quo warranto, habeas corpus, mandamus, and procedendo, and in no other case whatever. Still, we think the time for making application to that court for a new trial might constitutionally, by legislation, be extended to a term of the court subsequent to that in which the judgment was rendered. The granting of such new trial, and vacating the judgment, would not be the exercise of original jurisdiction. The superior court would *kave acquired jurisdiction of the cause, and of the parties, by appeal; and having rightfully acquired that jurisdiction, under the constitution, the question would be, what power is the court capable of receiving over the cause and the parties, as an appellate court; or, in other words, where the superior court has, by appeal from some inferior court, rightfully acquired jurisdiction of a cause, can the legislature, without a violation of the constitution of the state, confer on the court the power to correct its own decisions in such appellate cases, at a subsequent term of the court, and after it has rendered a judgment or decree, by writ of error coram nobis, or by a bill of review?
That a bill of review in such case would be an original proceeding, and that, in entertaining it, the court would be exercising an original jurisdiction, and powers which can not be conferred on the Supreme Court, is the claim of the parties making this motion. It is said that when the decree is once made, and the term of the court closed, both parties and the cause are beyond the power of the court; and after that term, jurisdiction could be acquired only by an original proceeding, and, on the part of the Supreme Court, would be the exercise of an original jurisdiction, which is not, and *707 •can not be, constitutionally conferred on that court. If this claim be true, it certainly-puts an end to the controversy, and the bill must be dismissed for want of jurisdiction.
It is undoubtedly true, that no bill of review can be filed until after a final decree is rendered, and the parties, in effect, out of court. Can the parties be brought into court a second time, for the purpose of having that decree reversed, unless by an original proceeding? The complainants in the original bill may be the defendants in the bill of review, and, according to our practice, the defendants must be brought into court by a subpena in chancery, if •one can be served. It does not, however, follow that, because the bill prays a subpena, and the court issues one, the court is necessarily exercising an original jurisdiction. If a cause is brought into the Supreme Court by a writ of error to an ^inferior ■court, some process must be served on the defendant in error; and yet it could hardly be contended that the Supreme Court, in such •case, was exercising an original jurisdiction, merely because the parties were, for the first time, brought before the Supreme Court by a process issued by that court; so that it can not be determined ■that the Supreme Court is in the exercise of original jurisdiction, merely because it brings the parties before it by original process.
Is a bill of review an original proceeding ? Is it any more so than a writ of error, to reverse the judgment of an inferior court ? The one is prosecuted to reverse a judgment of an inferior court, the other to reverse the decree of the same court;' the rights of the parties have, in both cases, been determined by a competent tribunal, and the object of the proceedings, in both cases, is to reverse that determination. It might be difficult to find any treatise ■on chancery proceeding in which it is distinctly claimed that a bill ■of review is an original bill. Some authors treat it as a bill in the nature of an original bill; others as a secondary bill; and Cooper, in his Treatise on Equity Pleadings, says it is not an original bill. He divides bills into original and not original bills. He calls all those original bills which relate to some matter “ not before litigated in the court by the same parties,” and those not original “ which relate to some matter already litigated in the court by the same parties, and which are either an addition to or continuance of an original suit.” Cooper’s Eq. Pleadings, 43. Among these bills not original, he names a bill of revivor, a supplemental bill, a .bill of revivor and a cross-bill, a bill to a decree *708, 709 in a former suit into execution, a bill to impeach a decree for fraud, .and a bill of review. • These several bills are said, by Cooper, not to be original bills; they all relate to matters already litigated by the parties. Story says : “ The most general division of bills is into those which are original and those which are not original. Original bills are those which relate to some matter not before litigated in the court *by the same persons and standing in the same interests. Bills not original are those which relate to .some matter already litigated in the court by the same persons, and which are either an addition to or a continuance of an' original bill, or both. There' is another class of bills which is of a mixed nature, and sometimes partakes of the character of both of the -others. Thus, for example, bills brought for the purpose of cross-litigation, or of controverting, or suspending, or reversing some -decree or order of the court, or of obtaining the benefit of a former decree, or carrying it into execution, are not considered as strictly a continuance of the former bill, but in the nature of original bills.” ■Story’s Equity Pleadings, sec. 16. Indeed, an application to the same court in which a decree was made to reverse its own decision is sometimes termed an appeal, and consequently may be said to be, on the part of the court determining such application, the exercise of apq>ellate jurisdiction. Chief Baron Gilbert says : “ The sentence by the canon and civil law was two-fold — interlocutory and ■definitive. The interlocutory was any order pronounced by the judges in the .cause touching the proceedings before they came to a definite sentence; and the interlocutory order is always alterable before the definitive sentence. The definitive sentence must always be in writing, and can not be altered after it is pronounced and signed by the judge; but after it is so signed, they might appeal to a superior jurisdiction. But where they were in the last resort, as when it came up to the prince, there they might appeal from the prince uninformed to the prince better informed, which was in the nature of a review of the same sentence. Thus it is in the court of chancery; for all orders are interlocutory till they come to the definitive sentence, which is signed by the court; for that sentence, signed and enrolled, is the definitive sentence in the cause, and all preparations before that are but interlocutory. For the decree pronounced on the hearing, which is taken down by the register, is but an interlocutory sentence, till it comes to be signed by the ■*judge of the court and enrolled.” Story’s Eq. Pleadings, *710 321, note I. This was probably the origin of our bills of review; and if so, in their very origin, when the cause was in a court of the last resort, by appeal, a proceeding in the nature of a bill of review to the decision of the same court, is called, by Chief Baron Gilbert, an appeal
A bill of review is, in chancery, what a writ of error coram nobis is at law, and if sustained, places the parties where they stood at the time the error occurred. The latter is sustained for error in fact only, while the former may be for either an error in law or for newly-discovered evidence, which could not possibly have been used at the time when the decree passed, or, at least, could not have been used by the exercise of proper diligence. A bill of review does, indeed, in many respects, assume the form of an original bill; but it can not, in its very nature, be an original action; it must necessarily be founded on a matter already litigated and determined between the same partifcs. Its effect on a decree in the same court is precisely what the effect of a writ of error is on the judgment of an inferior court. They are .both founded on a previous adjudication, and the object of both is to reverse that adjudication. The-one which originates in the Supreme Court to reverse the judgment of the district court, is said to be appellate; while the other, originating in the same court, to reverse its own decree, is said to be the exercise of original jurisdiction. It is insisted that it is essential to appellate jurisdiction that the cause must-have originated in an inferior court; that the first step in the case must be taken in the low^r court; and this is undoubtedly true as to the general acceptation of the term “ajDpellate jurisdiction.” It is true, under our-constitution, that the only jurisdiction which our courts, can have, may bo said to be either original or appellate, and the difficulty in this case is to detox-mine what is original and what appellate jui-isdiction.
The district court, under our constitution, is capable of receiving no more original jurisdiction than the Supreme Court. The ^constitution provides in art. 4, see. 6, that the district court shall have like original jurisdiction with the Supreme Court, and such appellate jurisdiction as may be provided by law. Nearly all cases originating in the court of common pleas may be appealed to the district court, and the judgment or decree thereby in effect vacated. The whole case is in the district court, and it makes a final decree; but it has no to entertain a bill of review to its own *711 decree, because, as is claimed, that would be the exercise of original jurisdiction, and the bill filed in such case would be an original bill or suit.
Independent of any statutory provision, a court having equity jurisdiction could entertain a bill of review. The court making a decree could always review it, or, at any rate, a court having original chancery jurisdiction could do so. The only two cases in which this bill could be brought, are declared by the ordinances in chancery of Lord «Bacon, one of which is, that “no decree shall be reversed, altered, or explained, being once under the great seal, but upon bill of review.”
The entertaining a bill of review is a long-established practice of courts of chancery, a power incident (at least) to a court having original chancery jurisdiction. To prefer such a bill had become an established remedy to correct errors of the court making the decree. Our statute directing the mode of proceeding in chancery, did provide that any person who was a party to a decree of a court of chancery, his heirs, executors, or administrators, might file, a petition for a review of the proceedings, in which such former decree was rendered, at any time within five years next after the rendering of such decree, etc. But I think it may be safely said that this section of the statute operated rather as a limitation of the time within which the petition might be filed than as conferring a power upon a court of chancery to entertain a bill of review. The power existed without this statute.
It seems to follow that before the adoption of the new constitution, *if chancery jurisdiction had been conferred on the court of common pleas, it could, without the aid of a statute, have reviewed its own decree upon a bill of review. In such ease, if the legislature had authorized an appeal to the Supreme Court from the original decree, thereby carrying the whole case to the Supreme Court, to be by it considered and determined, it would be strange if the appellate court could not review its own decree. It would, in effect, be appealing from the decision of a court of full and ample jurisdiction, to make a final decree, and afterward to correct errors in the decree to a supreme or higher court, with less jurisdiction, with less power, than the court from which the appeal had been taken. The lower court could, but the court higher in title could not, correct its errors made in its own decree. If such be^ the law, it must be based on the idea either that the higher court. *712 can not err, or that it is for the good of tbe public that there should be an end of litigation, whether the decree be wright or wrong.
Our old system of appeals from the decision of facts was almost peculiar to Ohio alone. It amounted to a second trial of the same case in another court. It was not confined to questions of law, but embraced the trial of questions of fact also. Under such a system, it would seem to be almost a matter of necessity that the Supreme Court should have at least as much power as the inferior court from which the case had been appealed.
The reasons for limiting the power or jurisdiction of an inferior and a superior court are very different. The reason for not conferring certain jurisdiction on a justice of the peace or probate judge, would not be the reason why the same jurisdiction should not be conferred on the Supreme Court. Various and cogent reasons might exist why original jurisdiction in all cases should be conferred neither upon the district nor the Supreme Court; but when the constitution makes these superior courts capable of receiving appellate jurisdiction, and the law authorizes the ^appeal, as at now does, of the whole case from the decision 'of the court of (Common pleas to the district court, no good reason can be given in ¡such case for limiting the power of the district court over the case -thus appealed, or for giving it less power than the court, from which -the appeal was taken, had before the appeal. The district court •.should have at least the same power over the case and parties ■which the court of common pleas had. The constitution contcm¡plated the right of appeal from the common pleas to the district ■ court, and provided for appellate jurisdiction in that court of any .amount of business, and therefore limited its original jurisdiction •to the four cases mentioned in that instrument. If the code, which ¡undertakes to abolish the distinctions between actions at law and suits -in chancery, had never been passed, or should be repealed, and the ¡distinction between the two jurisdictions still existed, or should be •restored, we think, by a fair construction of our constitution, the legislature might confer, on either the district or Supreme Court, jurisdiction to review all decrees by them made in the same manner as if the cases had, or could have, originated in those courts. That a bill of review is not an original bill or suit, but depends ■ entirely on the fact that the case has already been litigated in court iby the same parties; that when a court of chancery acquires jurisdiction of a case by appeal, it has jurisdiction, by virtue of *713 its appellate power, to review its own decisions; and that a law, authorizing either of these courts to do so, would be a constitutional law.
We therefore come to the conclusion that power may, constitutionally, be conferred on either the district or Supreme Court to review its own decrees or decisions, after the expiration of the term at which the decree or decision was made. In coming to this conclusion, we have overlooked neither the arguments made, nor authorities cited, against the correctness of this conclusion. In some of the cases cited the law has been held otherwise. The opinion of the court, in the case of Cox & Catron v. Breedlove et al., 2 Yerger, 499, is quoted at great length in the argument. *It might, without fully examining the constitution and statutes of Tennessee, be very difficult to distinguish that case from the one under consideration. Indeed, the case is probably in point and against the opinion here expressed. The court in that ease, after quoting various authorities to show what a bill of review is, says: “The prayer of the bill is, that the decree which has been pronounced may be reviewed and reversed; that the complainant may have a subpena (which is an original process out of chancery) requiring the defendant to appear and answer the bill, and also for an injunction. All the parties to the original bill must be parties to the bill of review. What is all this but the exercise of original jurisdiction?” We do not assent to the correctness of this reasoning; all these things may be done in the exercise of appellate jurisdiction.
In a note to the argument of one of the counsel who supports this motion, various eases are cited to sustain the propositions contained in the argument. The case of the Washington Bridge Co. v. Stewart, 3 How. S. C. 413, is cited to support the proposition, “that the Supreme Court of the Hnited States has no power to review its own decisions, whether in a case at law or in equity; a final decree in chancery is as conclusive as a judgment at law.” The case itself did not present the point here made. It was not a bill of review. The original proceeding was a bill in equity, which had been appealed to the Supreme Court, and a decree made in that court affirming the decree of the court below. The case was then in the lower court, in pursuance of its original decree, referred to an auditor, and a final decree made. Erom this last decree a second appeal was taken, by the same party, to the Supreme Court, and' *714, 715 an attempt made in that court, upon the appeal from the second decree, to induce the Supreme Court to reconsider its first decree of affirmance. Judge "Wayne, in delivering the opinion of the court, refusing to reconsider its first decision, on the second appeal, uses the very language quoted by counsel. The language used by Judge "Wayne is quoted from the opinion of Justice *Baldwin, in ex parte Sibbold, 12 Pet. 492. The case of ex parte Sibbold, was not a bill of review, but (in part) a motion to reform a mandate, issued by the Supreme Court to the court below. Justice Baldwin, in delivering the opinion of the court, makes use of the language above quoted, but adds: “ Bills of review and writs of error coram nobis, at' law, are exceptions which can not affect the present motion;” so that, if any inference can be drawn from the expression used by Justice Baldwin, it would be, that a-bill of review might be entertained by the Supreme Court. However that may be, neither of these two cases is authority against the right of a supreme appellate court to entertain jurisdiction of a bill of review. Another case is that of Stafford v. Bryan, 2 Paige, 45. It is claimed that this last case sustains the doctrine, “that a bill of review will not be allowed for newly-discovered facts, to review a decree affirmed in the court of errors, unless the right is expressly reserved in the final decree of the appellate court.” The case is a short one, with a long syllabus. Stafford filed a bill against Bryan, in the court of chancery, for the purpose of recovering the amount of a lost note. The bill was dismissed, and an appeal taken from the decree of dismissal to the court for the correction of errors. Pending the appeal, Stafford examined Bryan as a witness in another case, and after such examination, applied to the court of errors to stay the hearing in that court, until he could apply to the court below for leave to file a supplemental bill, in the nature of a bill of review, for the purpose of showing that, upon such examination, the defendant admitted that he had not paid the note. That motion having been refused, and the remititur, containing the affirmance of the decree of dismissal, being brought into the court below, Stafford presented a petition, in the lower court, for leave to file a supplemental bill, in the nature of a bill of review. The chancellor, refusing leave to file the petition, among other things, said: “ If this court can review, on new evidence, a decree affirmed in the court of dernier ressort, it can also review a decree which has *been reversed there. But I doubt the authority of the chancellor to do it in either case, unless *716 the court has expressly reserved to him that right. . If the facts in this ease had been sufficient to authorize such a proceeding, a provision to that effect might have been inserted in the decree of affirmance. But if that decree was not in the way of this application, I think the facts in this case are not sufficient to authorize the filing of a bill of reviewand the chancellor dismissed the petition with costs.
It is not easy to see what direct bearing this case can have upon the question before this court. If the chancellor was right in supposing that the court for the correction of errors had power, and did decide the question, that a sufficient case was not made to authorize the filing of a bill of review, then he was undoubtedly right in not reversing the decision of the higher court; but if he means to say that, where a case is taken to the court for the correction of errors, for the purpose of reversing a decree of the chancellor, for errors apparent, and the decree is affirmed, and the cause remanded to the court below, and afterwards application is made to the court below for leave to file a bill of review, for newly-discovered evidence, discovered after the decree of the court above, the application must of necessity be refused; the accuracy of such an opinion may well be doubted, on the authority of the case of Barbon v. Stearle, 1 Vern. 416, and Story’s Eq. Pl., sec. 408.
But we do not propose to review the case cited; we place our opinion upon what we think is the proper construction of our constitution, connected with the nature of our own appellate system, in operation for half a century before the adoption of the constitution, 'and at the time of its adoption, and upon a ground of authority that a bill of review is not an original bill or suit.
Still, however, it is claimed that the legislature has not conferred this jurisdiction upon the Supreme Court, even if it shall be considered appellate jurisdiction. I have already incidently, to some extent, considered this question.
*As before stated, the original decree sought to be reversed by this bill of review, was made at the January term, 1853, of this court. The code did not take effect until July following.
By the 533d section of the code, it is provided that “the final orders or decrees of courts of chancery heretofore rendered, or which may be hereafter rendered, in any chancery proceeding ponding when this code takes effect, may be reviewed in the same manner, and within the same time, as if this code had not taken effect.’ The *717 12th section of the schedule of the constitution, provides that the district courts, in their respective counties, shall be the successors of the present Supreme Court, and all suits pending in said Supreme Court, in the several counties of any district, shall be transferred to the respective district courts of each county, and be proceeded in as though no change had beep made in said Supreme Court.
By tbe 5th sec. of the act relating to the organization of courts of justice, passed February 19,1852, the judge of the district court or any judge of the Supreme Court, sitting therein, may, on motion of either party, reserve any important or difficult question, arising in any proceeding pending in the district court, for decision in the Supreme Court.
The Supreme Court may, by special mandate, require the district court or court of common pleas of the county in which any suit determined in the Supreme Court may have originated, to carry the judgment or decree of the Supreme Court into execution.
By the 1st sec. of an act regulating appeals, passed March 23, 1852’ appeals may be taken, in all civil actions or suits, from tbe common pleas to the district court; and it is provided that the cause so appealed shall be again tried, heard, and decided, in the district court, in the same manner as though the district court had original jurisdiction of the cause.
By what is very appropriately termed by counsel “ a labor-saving process,” the legislature, in 1853, passed an act to *amend the act of July 19, 1852, by the 6th section of which it is provided, that “ all process and remedies authorized by the laws of this state, when the constitution took effect, may be had and resorted to, in the courts of the proper jurisdiction, under the present constitution;” and all the laws regulating the practice of, and imposing duties on, or granting powers to the Supreme Court, or any judge thereof, and to the court of common pleas, or any judge thereof, respectively, under the former constitution, in regard to matters not hereinbefore provided for, etc., shall govern the practice, and impose like duties on the district courts and courts of common pleas, and the judges thereof, respectively, created by the present constitution, so far as the same are applicable to said courts, respectively, etc.
From the provision of the constitution above recited, in relation to pending suits, as well as from the legislature, since the adoption of the constitution, it is very clear, that it was intended that par *718 ties to pending suits should be placed in no worse situation than those who became parties to suits instituted after the adoption of the new constitution. By the constitution, suits transferred from the old Supreme Court to the district court were to be “ pi'oeeeded in as though no change had taken placean the Supreme Court.” The very least that can be said of this provision is, that the right of action, as well as the remedy of a trial in the district court, without the necessity of commencing a new suit, should be saved to parties to pending suits. “ The case should proceed, or go forward, precisety as though no change had taken place in the Supreme Court.”
If the forms of action had not been abolished, and a suit in chancery had been commenced after the adoption of the constitution, and appealed to the district court, the case pending at the time of the adoption of the constitution, and transferred to the district court, and the suit commenced after the adoption of the constitution, and appealed to the district court, would both at least stand, in the district court, on the same ground, and the parties *in each suit would have the same rights and remedies in that court. This, we think, is the very least effect which can be claimed for this provision of the constitution.
So, also, the very least effect which can be claimed from the 533d section of the code is, that if a decree had been rendered in any ease, before the adoption of the code, that the decree might be reviewed in the same manner, and within the same time, as if the forms of action had not been abolished by the code, and no new mode of revising or reviewing judgments or decrees had been provided by the code; in a word, that if the right to a bill of review existed before the adoption of the code, that right was not taken away by the code.
The least effect which could be claimed for the “ labor-saving ” section, and the act to which it is an amendment, would be, that the remedy by bill of review might be used in the district court and court of common pleas, unless taken away by the constitution, or by some statutory provision; and if not taken away by either of these, then this section kept in force the chancery practice in relation to bills of review, precisely as if “ no change had taken place ir the old Supreme Court,” and the district court had been its successor, possessing the same jurisdiction and powers of the old Supreme Court.
We have already said that, in our opinion, the constitution did *719 not prohibit the legislature from conferring on the district or Supreme Court the power to review its own decisions. These sections of the statute, by any fair construction, conferred on the district court the power to entertain a bill of review, or any other remedy, not taken away by the constitution or statute; and so far from being taken away in this case by statute, it is saved, in a pending suit, by the code.
But we go still further on this subject, and, without the aid of the “labor-saving section,” hold that the authority of law to appeal a case from the common pleas to the district court, when such appeal vacates the decree below (even if a lien is preserved), *and where the case is retried in the district court, precisely as if it bad not beep heard in the coui’t below> and where the district court is authorized to enter a final decree in that court upon the merits, such law necessarily confers on the district court the power to entertain a bill of review to its own decisions, such bill, in our opinion, not being an original suit, or bill, but a proceeding known and practiced for ages in courts of chancery, for the correction of its own errors. And not only for the correction of its own errors, but also for the purpose of opening a decree, to permit a party to introduce newly-discovered evidence, which he by no possibility could have introduced, on the hearing of the cause, before the final decree; evidence which would show the real truth in the case, change the decree, and do justice and equity between the parties. To say, because a case had been appealed to the district court, to be there (in the language of our statute of appeals) “tried, heard, and decided, in the same manner as though said district court had original jurisdiction of the. cause,” and that neither the district, court, nor any other court, could entertain jurisdiction to review the decree of the district court for errors of law or newly-discovered evidence, would be to say that we had a judicial system in which plain justice could not be obtained by the citizen.
The district court has the same power over the parties and cause; by virtue of the appeal, as though it had had original jurisdiction of the cause. If such language does not confer on the district court as much power in the case as the court of common pleas had, it is difficult to conceive what language would confer such power. We are therefore clearly of opinion that the legislature has conferred power on the district court to review its own decisions, by bill of review.
*720, 721 Having therefore arrived at the conclusion, 1. That both the Supreme and district courts are, by the constitution, made capable of receiving jurisdiction to entertain a bill of review; and, 2. That such jurisdiction has been conferred on the district court *by the operation of the appeal of the cause, without any other legislation for that purpose, it remains to be considered whether the same jurisdiction has not also been conferred on the Supreme Court; and this is the only question of doubt in the case.
When two cases are in the district court, one taken there by an appeal from the court of common pleas, and the other by being transferred from the old Supreme Court, they both occupy the same grounds. The court has at least as much power over the one as the other case, and the parties in each case have at least, equal rights and remedies in the district court. If the district court makes a final decree on the merits, that decree may be reviewed, either for error in law, or for newly-discovered evidence. Suppose, however, that the district coui’t makes no decree whatever, but is divided in opinion, or the judge of the Supreme Court, upon motion of one of the parties, reserves the case to the Supreme Court, to be there decided, and a final decree is made in the Supreme Court, can such decree be reviewed ? is the question. The case is now in a court of the last resort, and it has made an erroneous decision, or new evidence has been discovered since the reservation, and since the decree ; the decree must be reversed by this court of dernier ressort, or it can not be reversed at all.
It is one thing for the supreme judicial tribunal of a state or nation to say, we will not review our decisions; but it is quite a different thing to say, wo have no power to do so. When such court hasno other power than a revising power, perhaps it might well say, we can not review our decisions.
If this case, instead of being a bill of review to review a decree upon a bill of review revising the decree below, had been a bill of review to review a final decree, or an original bill, how would the case then have stood ? In such case, there would have been no decree in the common pleas, for that would have been vacated and annulled by the appeal to the district court; there would have been no decree in the district court, for the *cause was, without docree, reserved to the Supremo Court; and the only decree in existence, in any court, would be the decree in the Supremo Court, and, therefore, the only decree which could be reviewed. And so is the *722 case before us. The appeal from the common pleas vacated the decree in that court; no decree could have been made in the district court, otherwise the cause could not have been reserved.
Upon what principles then did the original bill of review, upon which the decree was made in this court, get here ? When the case was in the district court, that court had power to hear and determine the case, as though it had had original jurisdiction of the case. But the cause is reserved for decision by this court. Had the Supreme Court any loss jurisdiction over the cause and the parties, upon the question reserved and decided, than the district court had? We think it had-not; that the district court reserved the cause, as by law it had a right to do, and in that reservation, the same power over the question reserved, and parties, was conferred on the Supreme Court which the court had from which the case was reserved, viz., to hear and decide, as though the question had originated in the Supreme Court.
* But again. By the act before mentioned, of March 14, 1853, it is provided that “all process and remedies authorized by the laws of this state when the present constitution took effect, not hereinbefore. provided for, may be had and resorted to, in the courts of proper jurisdiction, under the present constitution.” The meaning of this is, that the present courts, respectively, shall (so far as the constitution and laws since passed will permit) exercise the same jurisdiction that was exercised by their respective predecessors, when the constitution took effect. Now, when the constitution took effect, a bill of review was a “remedy” authorized bylaw; and the “court of proper jurisdiction” to entertain it, was the court in which the decree complained of had been rendered. This “ remedy ” is saved by the act, and the “ court of the proper jurisdiction ” is authorized to afford it; *tbat is, whichever of our courts has power to render the original decree, has power given to it by this act to afford the remedy, namely, a correction of error upon a bill of review. This court undeniably possessed the power to render the decree in question, and the above act gives it the power to correct its errors, if it committed any.
The motion 'to dismiss is overruled.